DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Ottawa County Court of Common Pleas which granted summary judgment to appellee Lake Erie Utilities Company ("LEU") in an action brought by appellants Roy Curtis, et al., for declaratory judgment and other equitable relief. From that judgment, appellants now raise a sole assignment of error:
{¶ 2} "The lower court abused its discretion, ignored the facst [sic] and failed to address issues when it granted summary judgment in favor of appellee."
{¶ 3} The facts of this case are as follows. Appellants Roy H. Curtis, Roy H. Curtis, Trustee, 8702 Bessemer, Inc., Michael E. Mitchell and Gayle Rini, are each purported owners of real property in the Burgundy Bay Subdivision on Middle Bass Island in Ottawa County, Ohio. Appellants claim to have acquired title to these properties on April 28, 2000, from Island Development Corporation ("IDC"). Up until that time, Curtis was the sole shareholder of IDC. IDC acquired title to the subject properties on May 27, 1971, from the trustee in bankruptcy for National Resort Lands, Inc. The trustee's deed transferred title to 25 individual parcels of real estate on Middle Bass Island, Ottawa County, Ohio, to IDC. The deed includes restrictions and limitations "pertinent to use and maintenance of utilities and facilities of common convenience," which, under the language of the restrictions, appear to apply to Burgundy Bay Subdivision No. 1. Those restrictions provide in pertinent part: "2. No dwelling house or structure which has been built or constructed on any of the sublots or other tracts shown on this plat shall be used for human habitation or other human or animal activity wherein the use of sanitary facilities is reasonably required until such time as a connection has been made whereby the sanitary wastes from such structure are conveyed through underground piping to a sanitary sewage treatment facility operated by Ottawa County or pursuant to authority duly granted by the Public Utilities Commission of Ohio and, further, until a connection has been made whereby potable water is provided for said dwelling house or other structure entirely through underground piping from a water treatment facility operated by Ottawa County or pursuant to authorization duly granted by the Public Utilities Commission of the State of Ohio. 3. The purchaser of each sublot shall deposit at the time of purchase the sum of Five Hundred Dollars ($500.00) with National Resort Lands, Inc., which amount shall be held in escrow by National Resort Lands, Inc. until such time as a physical connection to an operating sanitary sewage treatment plant and central potable water supply is made to said sublot, whereupon National Resort Lands, Inc. shall be authorized and required to: a. Pay over the sum of Three Hundred Five Dollars ($305.00) of said deposit as payment in full for contribution in aid of construction to the operator of the sanitary sewage treatment plant and the sum of One Hundred Ninety-Five Dollars ($195.00) to the operator of the central potable water supply, provided that such operator has duly procured a Certificate of Public Convenience and Necessity from the Public Utilities Commission of the State of Ohio * * *." The deed then further provides that "All of the foregoing restrictions shall be considered as covenants running with the land and shall bind National Resort Lands, Inc., its purchasers and their respective heirs, executors, administrators, successors and assigns * * * [and] all of the restrictions, conditions, covenants or agreements contained in Section A hereinabove shall continue in force and effect from now unto perpetuity * * *."
{¶ 4} On May 25, 2000, appellants filed a declaratory judgment action in the court below against, among others, LEU and Burgundy Bay Association ("BBA"). LEU is currently a nonprofit corporation that provides water and sewer services to its customers in the Burgundy Bay Subdivision. BBA is a property owners association comprised of owners of property in the Burgundy Bay Subdivision. LEU was first incorporated in 1967 as a for profit corporation. The original articles of incorporation for LEU stated that the purposes of the corporation were, in part, to engage in business as a sewage disposal and water works company, to acquire real estate, to subdivide and improve real estate by installing utilities, and to improve real estate in connection with the aforementioned purposes or as an investment purpose. From 1967 until October 1988, LEU was a public utility subject to regulation by the Public Utilities Commission of Ohio ("PUCO"). Also during this time, Curtis was the majority shareholder of LEU, owning 60 percent of the LEU stock. BBA owned the remaining 40 percent of the LEU stock.
{¶ 5} On October 18, 1988, a group of Burgundy Bay residents, calling themselves the Friends of Burgundy Bay, purchased from Curtis all of his shares in LEU for $50,000 in an attempt to resolve LEU's financial problems. This sale was approved by the PUCO and transformed LEU from a public utility into a non-regulated utility owned by all of the property owners in LEU's service area. See In re Comm. Investigation into the Operations Service of Lake Erie Utilities Co., case No. 86-1561-WS-COI, 1988 Ohio PUC Lexis 958 (Finding and Order dated October 18, 1988). Commensurate with this stock sale, LEU filed amended articles of incorporation with the Ohio Secretary of State to change LEU from a for-profit corporation to a not-for-profit corporation wholly owned by its customers.
{¶ 6} LEU is governed by three sets of documents: its Articles of Incorporation, Code of Regulations and Rules Governing Service (the "Rules"). The Rules state that the Rules "shall govern the rendering of water and sewer service, including the existing and future extensions of water mains and the making of connections thereto, and every Customer, upon the signing of an application for water and sewer service, or upon taking of water and sewer service, shall be bound thereby." The Rules then define the term "customer" in pertinent part as "any person who owns a lot in the Company's Service Area." The company's service area is then defined in pertinent part by the Rules as "the lots located in the plats of the Burgundy Bay Subdivision as recorded in the Ottawa County, Ohio, Recorder's Office * * * that as of September 23, 1995, (A) either receive from the Company (i) water and sewer service (Full Use Service) or (ii) sewer service (Sewer Only Service); and (B) is a lot to which the Company has already laid pipe for the purposes of providing water and sewer service (Available-For-Use Service) and is being billed by the Company for Available-For-Use Fees * * *." The Rules further set forth the procedure for property owners to follow when desiring water and/or sewer service, the company's hook-up policy and the company's hook-up fees. The company's hook-up fees are as follows: "The hook-up fee, payable to Lake Erie Utilities Co. (LEU) shall be equal to the sum of (i) the past due amount of the Available-For-Use fees shown on LEU's books as of the date of the hook-up application is submitted; (ii) finance charges applicable to the amount set forth in (i) above as shown on LEU's books; (iii) $3,500; and, if applicable, (iv) the cost of the sewer line connector." Finally, the Rules set forth the annual rates for water and sewer treatment chargeable to both full-use customers and available-for-use customers.
{¶ 7} Appellants filed the present action for declaratory judgment against LEU, its president and trustees, BBA, its president and trustees, and numerous owners of real property located within the Burgundy Bay Subdivision. The complaint essentially alleged that appellants owned property that LEU refused to hook-up to its water and sewer lines upon the terms and conditions outlined in the restrictions set forth in the trustee's deed, i.e. $500 per lot. Appellants then asked the court (1) to declare that LEU allow hook-ups to all lots within the "Curtis Subdivision" for $500 per lot, (2) that LEU install water and sewer lines along Fairway Drive and allow all lots to hook-up for $500 per lot, (3) that LEU be enjoined from spending any funds on improvements until all lines and hook-ups are completed as required by the restrictions of record within the entire subdivision, and (4) that BBA and LEU be enjoined from charging association dues and available-for-use charges respectively until the lines are constructed and hook-ups are available within the entire subdivision.
{¶ 8} BBA filed an answer and counterclaim against appellants. The counterclaim alleged that BBA was a judgment creditor of IDC and that each of the appellants claimed title to the subject properties pursuant to deeds from IDC, recorded on May 25, 2000, the same day of the filing of their complaint. The counterclaim further alleged that in the case of Burgundy Bay Assoc. v. Roy Curtis, case No. 96 CVH 213, the Ottawa County Court of Common Pleas determined that IDC's articles of incorporation were canceled on May 14, 1982, and as such that corporation could no longer conduct business in the state of Ohio. Accordingly, BBA asserted that the deeds conveying title to appellants were defective and did not convey the subject properties to appellants. BBA then asked the court to declare that the deeds purporting to convey the subject properties to appellants were defective and insufficient to convey title.
{¶ 9} After filing its answer, LEU filed a motion in the court below to stay the trial court action pending completion and exhaustion of LEU's internal administrative remedies. LEU asserted that although appellants had filed applications for service, LEU had not had an opportunity to properly consider the applications. More specifically, LEU averred that appellants had applied for service either shortly before or shortly after filing the present action. Because the relevant properties were outside of LEU's service area, LEU asserted that it had construed appellants' applications as requests to amend LEU's service area. In a judgment entry of January 8, 2001, the trial court stayed the trial court proceedings to allow the parties to exhaust the administrative remedies.
{¶ 10} During the period of the stay, LEU considered the applications of appellants for water and sewer service. Appellants Curtis and Mitchell applied for service in what is referred to in the relevant documents as the Curtis Subdivision. Appellants Curtis, 8702 Bessemer, Inc., Mitchell and Rini applied for service in what is referred to in the relevant documents as the Fairway Extension. Consistent with its rules and bylaws, LEU submitted the applications to its members/customers, who approved the application for service in the Fairway Extension but rejected the application for service in the Curtis Subdivision. The reasons for the rejection, as expressed in the minutes of the April 22, 2001 meeting of LEU's board of trustees, were as follows: "(a) From a practical standpoint, the proposal with respect to the Curtis Subdivision must be handled as a singular matter in order for the company to execute the proposed subdivision plat plan. As such, the Board found unacceptable the inconsistent pricing between the two applicants for service within the same unsubdivided acreage. (b) The proposed pricing set forth in Mr. Curtis' application, in the range of $285 for a full year's service and $35 for hookup was unreasonable on its face. (c) The applicants propose no additional consideration or incentive to the company for allowing otherwise unsubdivided raw acreage into the Service Area for residential use."
{¶ 11} On May 1, 2001, BBA filed a motion for summary judgment in the proceedings below. BBA asserted that because the corporate charter of IDC had been canceled in May 1982 for failure to pay corporate franchise taxes, the transfer of title from IDC to the appellants was invalid and the appellants had no legal authority to bring the present action. In their memorandum in opposition, appellants asserted that IDC's transfer of title to them was a legitimate act of winding up of the corporate affairs of IDC and that BBA had no standing or interest in the transfers sufficient to challenge the validity of the deeds.
{¶ 12} On October 1, 2001, the trial court filed a decision and order denying BBA's motion for summary judgment. In denying the motion, the court held that given the length of time between the cancellation of the corporate charter and the transfer of the properties to appellants, a genuine issue of material fact remained as to whether the transfer was necessary to wind up IDC's corporate affairs.
{¶ 13} Subsequently, LEU filed a motion for summary judgment on the claims against it. LEU asserted that during the stay, appellants had succeeded, in part, in obtaining the LEU service that they had sought through their complaint. To the extent appellants had failed to obtain service to the proposed Curtis Subdivision, LEU argued that it was not obligated to provide such service, that it had the legal authority to define its own service area and that LEU was well within its corporate rights to deny the service requested. In their brief in opposition, appellants asserted that LEU's service area was established by the original trustee's deed and the Declaration of Restrictions set forth therein. Because those restrictions run with the land, appellants asserted that LEU could not amend the service area. Appellants further asserted that under those restrictions, each of the parcels of land covered by the restrictions had funds withdrawn from the purchase price and placed on deposit to ensure that each of those parcels would receive utility services. Accordingly, appellants argued that issues of fact remained regarding whether LEU could take action to avoid providing utility services to all of the real estate parcels transferred under the original trustee's deed, whether LEU could charge landowners who took under the trustee's deed increased hook-up and service charges contrary to the plain language of the restrictions and whether LEU could redefine the service area to exclude land conveyed pursuant to the trustee's deed.
{¶ 14} On May 28, 2002, the trial court issued a decision and order granting LEU's motion for summary judgment. The court held that pursuant to the business judgment rule, LEU was entitled to the presumption that its decision not to extend its service area to include the Curtis Subdivision was reasonable. The business judgment rule "is a rebuttable presumption that directors are better equipped than the courts to make business judgments and that the directors acted without self-dealing or personal interest and exercised reasonable diligence and acted with good faith. A party challenging a board of directors' decision bears the burden of rebutting the presumption that the decision was a proper exercise of the business judgment of the board." Gries Sports Enterprises, Inc. v. Cleveland Browns Football Co. (1986),26 Ohio St.3d 15, 20. In applying the business judgment rule, the lower court noted that appellants proposed to pay significantly reduced rates for the service and that there were only two applicants for the proposed Curtis Subdivision. The court then determined that under these circumstances, the board's decision to find that the proposal was not economically feasible was not unreasonable and did not demonstrate a lack of good faith. Accordingly, the court held that there was no genuine issue of material fact and that LEU was entitled to judgment as a matter of law. It is from this judgment that appellants now appeal.
{¶ 15} In their sole assignment of error, appellants contend that the lower court erred and failed to address the issues before it in granting LEU summary judgment. For the following reasons we must agree.
{¶ 16} In reviewing a ruling on a summary judgment motion, this court applies the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
{¶ 17} In filing their complaint against LEU, appellants sought a declaration of their rights under the declaration of restrictions set forth in the trustee's deed. In granting LEU's motion for summary judgment as it did, the trial court essentially ignored the primary issue before it. In the case of Curtis v. Lake Erie Utilities Co. (Dec. 6, 1996), Ottawa App. No. OT-96-002, this court was asked to review the trial court's decision validating the available-for-use fees established by the same restrictions that are at issue in this case. We concluded that the restrictive covenant gave LEU the authority to impose utility fees governing all lots in Burgundy Bay Subdivision No. 1 and that the available-for-use fees were legally imposed. In particular, we noted that the fee was first approved by the PUCO in 1968 and that the PUCO had subsequently approved increases in the fee. We then found that because the PUCO had approved the stock sale which converted LEU from a regulated to a nonregulated utility, the available-for-use fees were legally imposed. Subsequently, in the case of Burgundy Bay Assn. v. Curtis (Jan. 28, 1999), Ottawa Cty. C.P. Ct. No. 96-CVH-213, the trial court, in determining whether certain parcels of real estate within Burgundy Bay were subject to the deed restrictions, held that because the parcels were part of the original property transferred by the trustee's deed, they were subject to the restrictive covenants regardless of whether or not they were part of Burgundy Bay Subdivision No. 1. That decision was not appealed to this court. It therefore appears undisputed at this juncture that all of the property transferred by way of the original trustee's deed is subject to the deed restrictions despite language in the restrictions that appears to limit their application to Burgundy Bay Subdivision No. 1. Nevertheless, we find that two genuine issues of material fact remain in dispute.
{¶ 18} The first issue that we find that remains in dispute is whether appellants in the present case had standing to bring the current action. In its decision of October 1, 2001, the trial court denied BBA's motion for summary judgment, thereby finding that a genuine issue of material fact remained regarding whether IDC's transfer of the properties at issue to appellants was necessary to wind up IDC's corporate affairs. Given this ruling, a genuine issue of material fact remains regarding whether these appellants have valid title to the properties at issue and, accordingly, whether they have standing to prosecute the present case.
{¶ 19} Assuming that the plaintiffs do have valid title to the properties at issue, a genuine issue of material fact remains regarding whether the $500 assessment set forth in the restrictions for the provision of water and sewer services constitutes a hook-up fee. To restate, the restriction provides in relevant part: "The purchaser of each sublot shall deposit at the time of purchase the sum of Five Hundred Dollars ($500.00) with National Resort Lands, Inc., which amount shall be held in escrow by National Resort Lands, Inc., until such time as a physical connection to an operating sanitary sewage treatment plant and central potable water supply is made to said sublot, whereupon National Resort Lands, Inc. shall be authorized and required to: a. Pay over the sum of Three Hundred Five Dollars ($305.00) of said deposit as payment in full for contribution in aid of construction to the operator of the sanitary sewage treatment plant and the sum of One Hundred Ninety-Five Dollars ($195.00) to the operator of the central potable water supply * * *." (Emphasis added.) In our view, an issue of fact remains regarding the meaning of the emphasized language.
{¶ 20} Accordingly, because genuine issues of material fact remain regarding the issues before the court, we must conclude that the trial court erred in granting LEU's motion for summary judgment. The sole assignment of error is therefore well-taken.
{¶ 21} On consideration whereof, the court finds that substantial justice has not been done the parties complaining and the judgment of the Ottawa County Court of Common Pleas is reversed. This case is remanded for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
 JUDGMENT REVERSED.